■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY H. RUMBLE, Appellant.—Appeal from a judgment of the Supreme Court of St. Lawrence County, rendered August 17, 1976, upon a verdict of the court, without a jury, convicting defendant of the crime of murder in the second degree. By an indictment filed November 7, 1975, the defendant was accused of having intentionally caused the death of his mother "by pouring gasoline upon the body of said Doris Jane Rumble, and setting same on fire". The decedent was discovered on fire by her father-in-law on July 1, 1975 immediately outside an entrance to the cellar of her residence and adjacent to a swimming pool. Her father-in-law either assisted her or told her to jump into the pool and she did so, supporting herself at its edge until the

local emergency or rescue squad arrived to assist. The record contains proof beyond a reasonable doubt that there was a flash fire in and about the decedent's cellar due to the agency of gasoline burning not only on the cellar floor and in some exterior area near the cellar exit/entrance, but engulfing about 60% of the decedent's clothing and body including her back and head. The factual question raised in this action was the cause of the gasoline being placed on decedent (and in and about cellar) and/or its ignition. Most fundamentally, the primary issue is whether or not there is proof beyond a reasonable doubt that the fire was an assault on the decedent. If there is proof of a criminal agency, the record contains proof beyond a reasonable doubt by reason of his proximity to decedent and conduct following the initial blaze that the defendant was the criminal actor. It is well established that circumstantial evidence is subject to a requirement that it should be difficult to reject the fact that it tends to establish by logical conclusion and/or reasonable inference based on experience. As stated in *People v Benzinger* (36 NY2d 29, 32): "The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence. (E.g., *People v. Borrero,* 26 N Y 2d 430, 434-435; *People v. Cleague,* 22 N Y 2d 363, 365-366.) The reason for the current application of this rule is not that circumstantial evidence is thought to be weaker than direct evidence, since the reverse is frequently true. Rather, the rule draws attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts. By highlighting this aspect, the rule hopefully forecloses a danger legitimately associated with circumstantial evidence—that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree (see *People v. Cleague, supra,* at p. 367). In the end, the application of the test becomes 'a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.' *(People v. Borrero, supra,* at p. 435; *People v Wachowicz,* 22 N Y 2d 369, 372.) Since the issue is the sufficiency of the circumstantial evidence, we view the facts most favorably to the People *(People v. Cleague, supra,* at p. 366; see *Noto v. United States,* 367 U. S. 290, 296). We assume that the jury credited the prosecution witnesses and gave the prosecution's evidence the full weight that might reasonably be accorded it." In the *Bensinger* case there was no doubt as to a crime having been committed, the question being whether or not the defendants therein had done the deed. As noted above, upon the record in the present case there is no doubt that defendant would be the guilty person, if a crime has been established. In *Bensinger* there were false statements by the defendants as to the time of their presence in the house for what was either an exceptionally long period of time with a quite visible body *or* at a time when the victim must have been alive but was killed in their presence. Since either of the foregoing alternatives was inconsistent with innocence, the *Benzinger* defendants lied as to the time of their entry into the presence of the decedent and there was no innocent explanation available for the falsehood, which led the court to find it sufficient circumstantial evidence of guilt, beyond a reasonable doubt. In the present case the primary evidence of a crime is the lack of explanation for gasoline upon the decedent's clothing and particularly the cause of such burning on her back. Much emphasis is placed upon the defendant's attempt to take a water hose

out of his grandfather's hands as that gentleman tried to remove a sprinkler therefrom; however, the hose was not on and the action is too equivocal to evoke a guilty inference. The defendant was at least at one time in a position where he might have been able to see that his mother was on fire, as well as the cellar, and he left the area after trying to get the hose without any explanation and, in fact, disappeared until he was arrested on July 4, 1975. Nevertheless, there is no clear evidence from which it can be said that he knew his mother was on fire or in danger of fire. Of course, once accused of a crime he was under no obligation to assert his innocence unless the circumstantial evidence was sufficient evidence of guilt in the absence of an explanation (cf. *People v Montanez,* 41 NY2d 53; *People v Murdick,* 57 AD2d 650). It is to be noted that in regard to the struggle for the hose between defendant and his grandfather, the grandfather and one eyewitness testified that defendant after ceasing the struggle and before leaving the scene turned off a water faucet feeding water to the hose; however, the grandfather unequivocally testified that the water was already turned off and thus, that action is not suggestive of guilt and might have suggested an attempt to make the water flow so as to fight the fire. The question really depends on what, if any, inferences of guilt should be drawn from the fact that the fire was gasoline fed on the body of the decedent or at least her clothing, including her eyeglass lens. That it was apparently on her back and head would not ordinarily be expected from an accidental spill and there is no evidence of suicide. Upon the present record, the description of the burns and the area which obviously was splashed with gasoline does not admit of an innocent explanation and requires the conclusion of an assault. The fire itself is a natural concomitant of the gasoline splashing and does not require separate proof that the defendant actually set the fire although his conduct in not attempting to extinguish what was clearly a fire does suggest a criminal intent. In the latter regard, the defendant's postarrest statement to his brother that "I'm not responsible for what I did" is not of such a nature as to equally infer innocence and guilt. The statement is one of guilt of an arson in the absence of any explanation by the defendant and in this case he did not testify (cf. *People v Murdick, supra; People v Henderson,* 53 AD2d 984, 987, 988). Upon the record as a whole, the circumstantial evidence is inconsistent with the defendant's innocence. Judgment affirmed. Koreman, P. J., Kane, Mahoney, Larkin and Herlihy, JJ., concur.